NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESUS ORTA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil Action No.: 2:15-cv-6061 (CCC)<br><br><br>OPINION |

**CECCHI, District Judge.**

I.　**INTRODUCTION**

　　Before the Court is Plaintiff Jesus Orta's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

## II.  BACKGROUND

### A.  Procedural Background

Plaintiff applied for DIB and SSI in March 2011, alleging disability as of March 22, 2011. (Tr.[1] at 10). The application was denied initially on March 31, 2011, and upon reconsideration on March 16, 2012. (Id.) On November 13, 2013, a hearing was held before ALJ Donna A. Krappa. (Id.) ALJ Krappa issued a decision on December 4, 2013 finding Plaintiff was not disabled, as defined by the SSA. (Id. at 21 (citing 20 C.F.R. §§ 404.1520(g) and 416.920(g))). Plaintiff requested review of the decision and the Appeals Council denied the request on June 3, 2015. (Tr. at 1). On August 7, 2015, Plaintiff instituted this action. (ECF No. 1).

### B.  Factual Background

Plaintiff was born on February 20, 1969 in Puerto Rico. (Tr. at 57, 266). He moved to New Jersey in 1985 and currently lives with his wife and three daughters. (Id. at 56-57). Plaintiff has a 5th grade education. (Id. at 16). On a day-to-day basis, Plaintiff reported he takes care of his children, does light housework, runs errands, reads and goes out of the house at least once a day. (Id. at 18). Plaintiff also attends church services three times a week. (Id.) Plaintiff has work experience as a forklift driver in a warehouse where he took orders for customers. (Id.) Plaintiff testified he stopped working because he could no longer bend down due to his back condition. (Id.)

Plaintiff has a history of chronic back pain which began with an injury from heavy lifting at work in 2007. (Id. at 16, 352). Plaintiff was treated with physical therapy and epidural steroid injections. (Id. at 16). Plaintiff had an MRI of his lumbar spine in August 2009, which showed a small bulging disk at L4-L5 on the left and L5-S1 on the right with no evidence of significant

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 8).

2

compression of the nerve roots. (Id. at 16-17). In September 2009, Plaintiff was referred to Dr. Sun H. Lee, a neurologist. (Id. at 16). Plaintiff reported his pain had gotten worse and he had experienced radiating pain down his left leg for several months. (Id.) Dr. Lee noted Plaintiff's straight leg raising test was positive, and he did not demonstrate any focal weakness of the lower extremities. (Id.) In Dr. Lee's opinion, Plaintiff was not a candidate for any surgical procedure, and she recommended Plaintiff undergo physical therapy or pain management. (Id. at 17).

In February 2010, Plaintiff underwent an epidural steroid injection. (Id.) During a follow-up in March 2010, Dr. Lee indicated Plaintiff had undergone physical therapy and an epidural injection with some benefit, and recommended Plaintiff continue with the treatment. (Id.)

Plaintiff was examined by Dr. Arden Fusman in November 2011 in an independent consultative examination. (Id.) In his report, Dr. Fusman indicated x-rays of Plaintiff's lumbar spine taken in February 2011 were normal. (Id.) Plaintiff stated he took the following medications: Gabapentin, Percocet, Motrin, Ibuprofen, and Finasteride. (Id.) Dr. Fusman indicated Plaintiff had a limited range of motion in his lumbar spine, positive straight leg raising on both sides - worse on the right than on the left - and a slow-wide gait, but that he did not use a cane. (Id.) Dr. Fusman also noted Plaintiff was able to squat halfway down, walk on his heels and toes, and had difficulty going from supine to sitting and standing up onto the examination table. (Id.) Dr. Fusman estimated Plaintiff could lift approximately fifteen pounds. (Id.)

Plaintiff's records were examined by two state agency consultants in December 2011 and February 2012, both of whom opined that Plaintiff was not disabled and could perform light work with some limitations. (Id. at 76-78, 103-104). In December 2012, Dr. Grace Szenkial completed a check box medical source statement indicating Plaintiff had a more limited residual functioning capacity ("RFC"). (Id.)

3

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.   Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the

impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. Id.

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV.  DISCUSSION

### A.  Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 13). At steps two and three, the ALJ found Plaintiff's impairments of a disorder of the back and obesity were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 4014, Subpart P, Appendix 1. (Id. at 13-14).

The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform, *inter alia*, the exertional demands of light work as defined under 20 C.F.R. §§ 404.1567(b) and 416.967(b), specifically that he was able to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day provided he is given the opportunity to stretch for three to five minutes every hour. (Id. at 15). The ALJ also found that due to pain and side effects of medication, Plaintiff was unable to perform the mental demands of skilled work, but was able to perform jobs that are simple and

repetitive. (Id.)

To make this conclusion, the ALJ considered all of Plaintiff's symptoms and their consistency with the evidence. Specifically, the ALJ considered Plaintiff's reports of lower back pain and difficulty standing and sitting for longer than 15 minutes at a time. (Id. at 16). The ALJ considered Dr. Lee's recommendation of physical therapy and Plaintiff's treatment with epidural steroid injections. (Id. at 16-17). The ALJ discussed Dr. Fusman's examination of Plaintiff and his report that Plaintiff was limited in his ability to walk and stand. (Id. at 17). The ALJ found Dr. Szenkial's report and Plaintiff's statements of intensity, persistence and limiting effects of his impairments were not entirely credible because they were inconsistent with Plaintiff's daily activities and the medical record as a whole. (Id.)

At step four, the ALJ found Plaintiff was incapable of performing past relevant work as a fork lift operator, which consisted of semi-skilled work performed at a medium level of exertion. (Id. at 19). At step five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform. (Id. at 20). The ALJ identified these jobs as: mail clerk, cashier, and inspector/hand packager. (Id.)

### B. Analysis

Plaintiff makes the following arguments in support of his contention that the ALJ's decision should be remanded: (1) the ALJ failed to evaluate obesity in accordance with SSR 02-1p, and (2) the RFC analysis was not supported by substantial evidence. The Court will address each argument in turn.

#### 1. The ALJ Properly Considered Plaintiff's Obesity

Plaintiff asserts this Court should remand due to the ALJ's failure to evaluate Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-01p, 2002 SSR LEXIS 1 (Sept. 12,

2002). (Brief in Support of Plaintiff ("Pl. Br.") ECF No. 11, at 20-23). This argument is unavailing.

The Third Circuit addressed this issue in Diaz v. Commissioner of Social Security, where the ALJ found obesity was a severe impairment at step two, but failed to assess the impact of obesity on the plaintiff's other impairments at step three. 577 F.3d 500, 503 (3d Cir. 2009). The court determined "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Id. at 504. In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." Id. at 504.

Defendant correctly argues Plaintiff must provide specific medical evidence indicating how Plaintiff's obesity affects his work-related limitations. (Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.") ECF No. 14, at 16-17). An ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-01p, 2002 SSR LEXIS 1 *4 (Sept. 12, 2002). In Rutherford v. Barnhart, the Third Circuit held remand is unwarranted, even if an ALJ fails to mention obesity, if a plaintiff fails to specify how his weight impaired his ability to work, particularly when the ALJ has relied on physicians who were aware of the plaintiff's weight and height. 399 F.3d 546, 553 (3d Cir. 2005).

Here, Plaintiff did not assert obesity as an impairment in his Disability Report. (Tr. at 270) When asked to list "physical or mental conditions that limit your ability to work," Plaintiff identified only "back pain herniated disc." (Id.) Plaintiff also "has not specified how [obesity] would affect the five-step analysis undertaken by the ALJ, beyond an assertion . . . . [of] generalized" impact." Rutherford, 399 F.3d at 553; see also Santini v. Comm'r of Soc. Sec., No.

8

08-5348, 2009 U.S. Dist. LEXIS 96649 at *17 (D.N.J. Oct. 15, 2009), aff'd 413 F. App'x 517 (3d Cir. 2011) ("The problem for Plaintiff . . . is that she has pointed to no medical evidence of record that her obesity *has* caused a substantial or relevant work-related limitation of her functioning. Absent that, the ALJ could not have come to any other conclusion . . . .").

Furthermore, unlike the ALJ in Diaz, in this case, the ALJ determined Plaintiff's obesity constituted a severe impairment at step two, and at step three, the ALJ considered the effect of Plaintiff's obesity on his work-related function. (Tr. 29). The ALJ noted Plaintiff is five feet, nine inches tall and between 230 and 240 pounds. (Tr. at 14). The ALJ considered that Dr. Lee "recommended a course of physical therapy suggesting that the claimant's obesity had not increased the severity of his orthopedic problems." (Tr. at 14). The ALJ concluded, "[w]hile the claimant's obesity when considered in conjunction with his back disorder, would not allow him to perform the exertional demands of work at the very heavy, heavy, or medium exertional levels, . . . it would not prevent him from performing the demands of light or sedentary work." (Id. at 15).

The Plaintiff has not identified any further medical evidence to suggest his obesity affects his work-related limitations in a more specified manner. Accordingly, the Court finds the ALJ properly took Plaintiff's obesity into consideration.

2. **The RFC Analysis is Affirmed in Part and Vacated in Part**

Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence because she substituted her own lay opinion for that of Plaintiff's treating physicians and she improperly dismissed the medical opinions of Dr. Fusman and Dr. Szenkial. (Pl. Br. at 10-14). The Court affirms the ALJ's RFC assessment, except for the determination that Plaintiff can walk and stand for six hours in an eight-hour work day.

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." Diaz, 577 F.3d at 505. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummet v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (internal citation omitted).

In this case, the ALJ relied upon the opinions of the state agency medical consultants and Plaintiff's daily activities to determine Plaintiff's RFC. (Tr. at 18-19) ("[T]he State agency physicians opined that the claimant was capable of a range of light work. . . . His activities of daily living and his social functioning have not been markedly limited by his impairments."). "The findings of fact made by state agency medical consultants must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review." Neal v. Comm'r of Soc. Sec., 57 F. App'x 976, 979-980 (3d Cir. 2003) (citing SSR 96-6, 1996 SSR LEXIS 3 (July 2, 1996)). The ALJ found Plaintiff could lift twenty pounds in accordance with the state agency physicians' opinion, rather than fifteen pounds as Dr. Fusman found. (Tr. at 15).

Regarding the ALJ's reliance on Plaintiff's daily activities,

> any kind of medical or nonmedical evidence can potentially satisfy the substantial evidence test. For example, a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion.

SSR 96-2p. See also 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929 (c)(3)(i) (providing the extent of a plaintiff's daily activities is a factor relevant to determining a plaintiff's symptoms). Here, the ALJ found Plaintiff's reported activities were inconsistent with Dr. Szekial's opinion that Plaintiff was unable to perform the demands of work at any exertional level. (Tr. 19).

The ALJ also explained she did not credit Dr. Szenkial's report because it was not supported by medical evidence. (Id. at 18-19). If "a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence," it will be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2) 416.927(c)(2); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). See also 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Here, the ALJ explained she gave "little weight to the broad statement by Dr. Szenkial because it is contrary to the objective medical evidence and the treatment notes as a whole. . . . The record as a whole does not substantiate the restrictive assessment by Dr. Szenkial." (Tr. at 18). Further, the ALJ noted "Dr. Szenkial does not cite any specific clinical findings to support the limitations asserted. . . . [H]er reports consistently have a dearth of objective, clinical findings." (Tr. at 18-19).

"Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011); 20 C.F.R. § 404.1527(d)(1)–(2)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

Here, the ALJ did not substitute her own lay opinion for that of Plaintiff's physicians, rather the ALJ evaluated the discrepancy of the record as a whole and determined Plaintiff's RFC, as she was required to do. The Court finds the ALJ's reliance upon the state agency medical consultants

regarding how much weight Plaintiff could lift and the rejection of Dr. Szenkial's opinion was supported by substantial evidence.

Plaintiff also argues the ALJ did not sufficiently discuss Dr. Fusman's finding that Plaintiff "is limited in his ability to walk and stand for long periods." (Pl. Br. at 10, Tr. at 445). Here, the ALJ acknowledged Dr. Fusman's finding, but did not sufficiently explain her conclusion that Plaintiff was nevertheless able to walk and stand for six hours at a time. (Tr. at 17-19).

After reviewing Plaintiff's medical records, independent examiners, Dr. Seung Park and Jyothsna Shastry, found Plaintiff could stand and/or walk for six hours in an eight-hour work day. (Id. at 76, 95). As support for her RFC finding generally, the ALJ provides, "the opinions expressed by the independent examiners are internally consistent and consistent with the record in its entirety." (Id. at 19). However, Dr. Park and Dr. Shastry's opinions are not consistent with Dr. Fusman's. Although the ALJ was free to choose to rely upon the independent examiners' opinions that Plaintiff is able to stand or walk for six hours in an eight hour work day, "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummet, 186 F.3d at 429 (internal citation omitted).

The ALJ did not sufficiently explain her reason to discount Dr. Fusman's opinion that Plaintiff was limited in his ability to walk and stand for long periods. The ALJ merely cited – in reference to Dr. Szenkial's report – Plaintiff's daily activities, in which he "takes care of his children, does light household chores, does the household dishes, makes the beds, sweeps the floors, goes out daily, drives a car, runs errands, grocery shops, reads, and attend[s] services three times a week." (Tr. at 18). However, none of these activities appear to require Plaintiff to walk or stand for six hours at a time without a break. The Court finds the ALJ did not adequately explain her decision to discount Dr. Fusman's opinion, and the Court cannot offer meaningful review of

this issue. The Court remands the case to the ALJ to provide an explanation as to Plaintiff's ability to walk and stand for extended periods of time.

## V. CONCLUSION

For the foregoing reasons, the Court affirms in part and vacates in part the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: October 25, 2016

**CLAIRE C. CECCHI, U.S.D.J.**